## UNGLAUB v. UNITED STATES.
### No. 4660.

Circuit Court of Appeals, Seventh Circuit.
March 31, 1932.

Edward H. S. Martin, of Chicago, Ill., and Charles S. Andrus and Lawrence Hoff, both of Springfield, Ill., for appellant.

Frank K. Lemon, U. S. Atty., and James P. Dillie, Asst. U. S. Atty., both of Springfield, Ill., William Wolff Smith, Sp. Counsel, Veterans' Administration, and Lawrence A. Lawlor, Atty., Veterans' Administration, both of Washington, D. C.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above).

Unglaub's own testimony conclusively shows that permanent and total disability did not occur while the first certificate was in force. He testified that while in the service in France in the summer of 1917 a truck he was driving fell on his foot and hurt it, and that ever since that occurrence his foot and knee troubled him, and that he could not march well. He further testified that in September or October of 1917 a horse kicked him on the knee, and that in October or November, 1917, he was thrown out of a locomotive over the tender, alighting across the center of his back on a piece of wood alongside the railroad, and could not work for a few days thereafter—all this while yet in the service in France. No report of any of these accidents, nor complaint of injury therefrom, was ever made to his superiors, nor to the medical department, and there is no record of treatment therefor or disability therefrom during his first period of enlistment, notwithstanding he remained in France in the service until May, 1919.

He testified that he was in a hospital in France, in February, 1918, four days with the mumps, and from November 3 to 11, and 17 and 18, with acute tonsilitis and acute gonorrheal prostatitis.

He testified that before obtaining his discharge he signed the required proof of his condition of health, and that he gave the answer "No" to the question, "Have you any reason to believe that at the present time you are suffering from the effects of any wound, injury or disease or that you have any disability or impairment of health, * * *" Similar answer was given to a like question on a paper of June 7, 1919. He testified that after his discharge, and between the first and second enlistments, he worked most of the time, saying he thought he worked at Bennett's garage from July, 1919, to July, 1920, at $18 per week, and that upon his re-enlistment, and up to his discharge therefrom, July 28, 1921, he regularly performed the duties of supply sergeant and band instructor, receiving the usual pay therefor. There is no record of any disability or disqualification during this period of service.

All of this, not to mention hereinafter-stated facts which likewise bear thereon, is absolutely incompatible with his claim that he became totally and permanently disabled while his first certificate was in force.

In justification of the ruling that his fraud in bringing about his second enlistment, and thus in procurement of his second certificate, vitiated that contract, we quote from appellant's brief (amply supported by the record) respecting Unglaub's misrepresentations in procuring the enlistment, and his motive for making them:

"He also signed a written declaration at that time that he considered he was then well and sound and that he had had the 'following illnesses, diseases or accidents since childhood: mumps, measles, chicken pox.' He did not state that he had had a railroad accident, because if they had made a more thorough examination he would not have gotten into the service. He did not tell them about the gonorrheal prostatitis, nor the horse kicking him, nor the truck injuring his foot, but certified he had never had gonorrhea, and also

that he knew that if he secured enlistment by misrepresentation or concealment as to qualifications for enlistment he was liable to court martial for fraudulent enlistment and if rejected for disqualifications known to him and concealed from the accepting officer he would not be furnished return transportation. * * * Although he made written statements May 31, 1919, June 7, 1919, and again on his discharge from his second enlistment, July 28, 1921, that he had no reason to believe he was then suffering from the effects of any wound, injury or disease or had any disability or impairment of health, such statements were not true and he signed them because he wanted to get out of military service. * * * In his application for disability compensation in 1924 he said he had $10,000 insurance during his first enlistment and that it had been dropped. That application was made out by a Red Cross representative and he did not tell her what to put in it."

Had Unglaub then stated that he had had these injuries, and this hospital treatment, and that he had suffered from tonsilitis (he had also during his first enlistment been treated in a hospital in Texas therefor), and that he had had gonorrhea, gonorrheal prostatitis, and was suffering in his foot and knee, there can scarcely be any doubt that he would not have been accepted for the second enlistment; and without this enlistment there could, of course, have been no second certificate. The medical testimony showed that the knee and foot trouble, which some years later was followed by, or developed into, serious arthritis, might well have resulted from previous tonsil infection, or gonorrheal or prostatic infection; and so the peculiarly significant materiality of the deliberately withheld facts is most apparent.

But the record discloses another ground justifying the peremptory direction respecting the second certificate: Unglaub's history following his second discharge clearly indicates that while that certificate was in force he did not become permanently and totally disabled, and that even up to the time of the trial such was not his condition.

That, for a number of years, he has suffered from a progressive arthritis in his leg, which has probably become permanent, seems evident from the record; but from his own account of himself it is plain that his disability has been and is far from total.

The second discharge was not because of physical disability, but because of a reduction in the army forces. After this discharge, he worked off and on in various places, but with more or less inconvenience on account of his knee and foot. He lived near Quincy, Ill., and in about 1925 entered the Soldiers' Home there, a state institution, where he has since been. While there he has done various things, one being to operate the switchboard at the home, receiving some compensation for it, and for about a year acting as a chauffeur for the superintendent there, receiving $30 a month.

In 1927 he was appointed postmaster for the home, and in this capacity has served ever since, receiving a salary of $900 per year. It was testified that at times he had more or less of volunteer help from others there in taking care of the mail, but in his four years in this capacity he has mainly done the work; and, while it is claimed his want of education narrows his opportunity for lighter service, his evidently satisfactory service as postmaster indicates a considerable degree of intelligence, as well as adaptability. At any rate, with this record of service, how can it be said that he is totally disabled?

Since under the contracts sued upon recovery is possible only in case appellant became totally and permanently disabled while one of the contracts was in force, appellant has wholly failed to establish his case, and the judgment must be, and is, affirmed.